UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:   HON. JANE A. RESTANI

| | |
|---|---|
| CONTINENTAL AUTOMOTIVE SYSTEMS, INC., | Court No. 18-00026 |
| Plaintiff, | |
| -against- | |
| UNITED STATES, | |
| Defendant. | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION
<u>FOR SUMMARY JUDGMENT</u>**

Anastasia P. Cordova, Esq.
Shawn R. Fox, Esq.
McGUIREWOODS LLP
Attorneys for Plaintiff
1251 Avenue of the Americas
20th Floor
New York, New York 10020
(212) 548-2100
acordova@mcguirewoods.com
sfox@mcguirewoods.com
*Attorneys for Plaintiff Continental Automotive Systems, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ 1

INTRODUCTION ............................................................................................................... 2

SUMMARY OF ARGUMENT ........................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    A.    RECAP OF THE NOX SENSOR'S FUNCTION ................................................. 4

    B.    THE NOX SENSOR IS NOT AN ANALYTICAL DEVICE UNDER
           ANY DEFINITION OF "CHEMICAL ANALYSIS" DEFENDANT
           PROFERS. ........................................................................................................... 6

           1.    Definition of "Chemical Analysis" According to Dictionary,
                   Defendant's Expert, and Case Law ......................................................... 7

           2.    The NOx Sensor is Not a "Gas or Smoke Analysis Apparatus" *Eo
                   Nomine.* ..................................................................................................... 9

           3.    The NOx Sensor is Dissimilar from the Devices Enumerated in
                   Heading 9027. ......................................................................................... 13

    C.    THE NOX SENSOR FALS SQUARELY WITHIN THE SCOPE OF
           HTSUS HEADING 9026. ................................................................................... 15

           1.    The NOx Sensor is an Instrument or Apparatus for Measuring or
                   Checking a Process Variable of a Gas, i.e. NOx Concentration. .............. 15

           2.    The NOx Sensor is More Similar to the Instruments Classified
                   Under Heading 9026. .............................................................................. 17

    D.    DEFENDANT FAILS TO ADDRESS SEVERAL OF CONTINENTAL'S
           ARGUMENTS. ................................................................................................... 18

CONCLUSION .................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abogados v. AT&T, Inc.*,
   223 F.3d 932 (9th Cir. 2000) ................................................18

*Burrows Equipment Co. v. United States*,
   62 Cust. Ct. 681 (1969)...............................................2, 6, 7

*Clarendon Marketing, Inc. v. United States*,
   144 F. 3d 1464 (Fed. Cir. 1998)..........................................10

*Diamond v. Diehr*,
   450 U.S. 175 (1981)........................................................14

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
   386 F.3d 1133 (Fed. Cir. 2004)...........................................13

*Pharmacia Fine Chemicals, Inc. v. United States*,
   9 CIT 438 (1985) ......................................................2, 7, 8

*Prochroma Techs., Inc. v. United States*,
   60 Fed. Cl. 614 (Fed. Cl. 2004) ..........................................13

*S.C. Johnson & Son, Inc. v. United States*,
   335 F. Supp. 3d 1294 (CIT 2018).........................................10

*Schlumberger Tech. Corp. v. United States*,
   845 F.3d 1158 (Fed. Cir. 2017)........................................9, 10

*United States v. Bockius*,
   564 F.2d 1193 (5th Cir. 1977) ............................................13

*Warner-Lambert Co. v. United States*,
   425 F.3d 1381 (Fed. Cir. 2005).............................................9

**Other Authorities**

Nev. Admin. R. 59.95412 ....................................................15

Rule 56.3 ..................................................................1, 2

HTSUS 9026 and 9027 ................................................. *passim*

Plaintiff Continental Automotive Systems, Inc. ("Plaintiff" or "Continental") submits this reply memorandum in support of its motion for summary judgment ("Motion") and in opposition to Defendant the United States' ("Defendant") Cross-Motion for Summary Judgment ("Cross Motion")[1] and asks that an order be entered:  1) granting Continental's motion for summary judgment; 2) denying Defendant's cross motion; 3) finding that the subject merchandise was misclassified by the United States Customs and Border Protection ("Customs" or "CBP"); 4) holding that the correct classification is heading 90 26, Harmonized Tariff Schedule of the United States ("HTSUS"); and 5) ordering Customs to reliquidate the subject entries with a refund of all overpayments of duty with interest as provided by law.

## INTRODUCTION

This is a straightforward case of tariff classification[2], in which the parties agree on the majority of the material facts.  Defendant, through its Cross Motion and Rule 56.3 Statement, ECF No. 63-2, attempts to complicate the function of the NOx sensor in general and the NOx sensor probe in particular, by applying academic definitions of "chemical analysis" and comparing the sensor to complex laboratory equipment.  None of these efforts change the principal function of the sensor or the essential character of its application, or detract from the fact that it lacks any

---

[1] Plaintiff incorporates by reference its Motion for Summary Judgment and materials attached in support. ECF Nos. 52-56.

[2] In its Preliminary Statement, Defendant states that "plaintiff sometimes confusingly suggests that the imported merchandise at issue is the Smart NOx Sensor."  ECF No. 64, Cross Mot. at 12.  At the time Customs issued HRL H262310, Continental was importing the entire NOx sensor and, as a result, Customs classified the entire sensor, not only the probe element, in HTSUS heading 9027.  At the time this case was filed in 2018, Continental was importing only the probe of the NOx Sensor.  *See* ECF No. 9, Compl. ¶ 6. As such, only the classification of the probe is at issue.  However, heading 9027 seems to suggest that if an entire device is classified within its scope, any parts of that device also fall into the same heading by default. *See* HTSUS Heading 9027; *see also* ECF 56-11, Add. Tab 11, HQ 086465.  As a result, it is Continental's position that entire NOx sensor, not just the probe, is a measuring device under heading 9026, not an analytical device under heading 9027.

analytical capabilities and only measures the concentration of NOx, a combination of chemical species.  In Plaintiff's view, any additional facts regarding the sensor's function that Defendant has inserted in its Rule 56.3 Statement are not material.

Plaintiff's position remains that the subject probe of the NOx sensor (as well as the NOx sensor itself) is a measuring device properly classifiable under HTSUS heading 9026.

## SUMMARY OF ARGUMENT

The correct classification of the NOx sensor is HTSUS heading 9026, not 9027, and Defendant's Cross Motion does not change this conclusion.  Although Defendant seeks to add complexity to the sensor's function by describing in painstaking detail what occurs within the sensor probe element on the molecular level, it does not change what the NOx sensor actually does:  measurement of the NOx concentration by creating a proportional electric signal.  As such, the NOx sensor does not meet any of the definitions of "chemical analysis" that Defendant cites in the Cross Motion, to the extent those definitions even apply.  Specifically, the sensor does not perform any analysis pursuant to the definition of Defendant's expert, which the expert himself even admits.  Nor does the sensor's function fall within the definition of "chemical analysis" proffered by *Burrows Equipment Co. v. United States*, 62 Cust. Ct. 681 (1969), *Pharmacia Fine Chemicals, Inc. v. United States*, 9 CIT 438 (1985), or HTSUS heading 9027.  Additionally, the NOx sensor does not meet the definition of a "gas analyzer," which is a completely different instrument performing different (and much more complicated) functions.  Specifically, the gas analyzer measures and analyzes many other substances in addition to NOx.

Contrary to Defendant's argument, the NOx sensor is not at all similar to the analytical devices enumerated in heading 9027.  It is more akin to the measurement apparatuses in heading 9026, and those discussed in other Customs' ruling, which Defendant conveniently ignores.  Specifically, it is nearly identical in its function to the hydrogen sensor, which Customs only a few

years ago classified as a non-analytical device.  But, Defendant conveniently sweeps this ruling under the proverbial rug along with other rulings that undermine its position.  Defendant similarly ignores the inconsistencies in its own processes, wherein Customs' own representatives questioned the classification of the NOx sensor under heading 9027, thus depriving in HRL H262310 of any deference whatsoever.

What Defendant seeks, in essence, is to lump the NOx sensor and the probe together with complex laboratory equipment, such as a spectrometer or FTIR or exhaust gas analyzer, which exceed the NOx sensor's capabilities by a tenfold.  If Defendant's argument is to be given any credit, any simplistic device that reacts to a substance in a mix (without identifying that substance) and measures its concentration would necessarily qualify as an analytical device.  This argument would simply render HTSUS heading 9026 a nullity.  To avoid this absurd result, the Court should grant summary judgment in Plaintiff's favor and order reclassification of the NOx sensor as a measurement instrument under HTSUS heading 9026.

## **ARGUMENT**

### A.   RECAP OF THE NOx SENSOR'S FUNCTION

Although Defendant would have the Court review the NOx sensor probe under the microscope, the focus should remain on the principal function of the NOx sensor and its application.

At the outset, Defendant has mislabeled the parts of the NOx sensor.  ECF No. 64, Cross Mot. at 13.  A diagram of the NOx sensor with the relevant parts labeled is pictured below.



Electrical
connector

Wiring harness

Signal
conditioning unit
(SCU)

Probe

The NOx sensor consists of a probe with a wiring harness and electrical connector, attached to a signal conditioning electronics unit ("SCU").  ECF No. 54, PSMF ¶ 9.  The probe assembled together with its wiring harness and electrical connector constitutes the subject merchandise.  The probe contains a ceramic element that comes into contact with exhaust gas containing NOx.  Then, oxygen is disassociated from NOx (nitrogen oxides) and the element generates an electrical signal produced by oxygen ions that correlates to the concentration of NOx in the exhaust gas.  *Id.*  ¶ 10.

The SCU converts the probe's simple electric signal to one that can be read by the vehicle's Engine Control Unit ("ECU").  *Id.*  The ECU uses the electrical signal from the NOx sensor, along with inputs from other sensors, to generate a parts-per-million value of NOx in the exhaust.  *Id.*  ¶ 12.  ECU is further capable of analyzing the signal to determine specific chemical species such as NO and $NH_3$.

The NOx sensor's principal function is to measure and check the value of the NOx parameter in a selective catalyst reduction ("SCR") system.  The SCR system first measures the amount of NOx entering the system using the signal from the NOx sensor located at the entrance.  *Id.* ¶ 13.  The ECU uses the information from the NOx sensor, in conjunction with information from other components, to calculate the amount of ammonia, in the form of a urea solution, that must be injected into the exhaust gas.  *Id.*  The ammonia reacts with NOx molecules and reduces NOx concentration in the exhaust gas.  *Id.*  The NOx sensor at the exit of the SCR system then checks the amount of NOx and relays information to the ECU.  *Id.* ¶ 14.

The function of the NOx sensor is demonstrated in the figure below.  *See also*, Add. 1, Rebuttal Expert Report of J. Schuster at 4.



### B.   THE NOx SENSOR IS NOT AN ANALYTICAL DEVICE UNDER ANY DEFINITION OF "CHEMICAL ANALYSIS" DEFENDANT PROFERS.

Defendant bases its argument that the NOx sensor is an analytical apparatus on several definitions of "chemical analysis."  A review of what the NOx sensor can and cannot do, however, demonstrates that the sensor does not fit into any of these definitions.

1.  **Definition of "Chemical Analysis" According to Dictionary, Defendant's Expert, and Case Law**

Since the terms "chemical analysis" or "analysis" are not defined in the HTSUS, Defendant relies on several definitions of "chemical analysis" from other sources.  The NOx sensor cannot be considered an analytical instrument under any of these definitions.  First, under the dictionary definition, "chemical analysis" requires "determination of the physical properties or chemical composition of samples or matter."  ECF No. 64, Cross Mot. at 24.  Other than measuring the concentration of NOx, the NOx sensor does not "determine" a physical property or chemical composition of the exhaust gas or any of its components.  Specifically, the sensor cannot "determine" NO from $NO_2$ or from ammonia ($NH_3$), nor can it "tell" with exactitude whether a specific component of the exhaust gas is water vapor, hydrocarbon, or something else.  All that the senor does is detect the combined property of the nitrogen substances—it cannot discriminate among those substances or provide a separate measurement of each.  *See* ECF No. 53, Declaration of Jack Meagher ("Meager Decl.") ⁋ 10.

Similarly, under *Burrows*, 300 F. Supp. at 458, the definition of "chemical analysis" requires: (1) *determination* of one or more ingredients of a substance either as to kind or amount; (2) performing a detailed examination of a complex substance for the purposes of understanding its nature of features; or (3) determination of what elements are present in a substance.  ECF No. 64, Cross Mot. at 25.  Admittedly, it is difficult to imagine how determining an ingredient of a substance as to "amount" is any different from "measurement" and that the *Burrows* court intended to conflate the terms "analysis" and "measurement."  Concluding that the determination of the amount of an ingredient—*i.e.*, "measurement"—somehow constitutes "analysis" would obliterate HTSUS heading 9026 because any measurement would necessarily become analysis.  This result is absurd and is certainly not the intended outcome of the case law Defendant cites.  As discussed

below, Customs' rulings with respect to other similar sensors, such the hydrogen sensor or the humidity sensor, highlight the absurdity of this conclusion by declining to classify those sensors in heading 9027.

Further, as discussed above, the NOx sensor is not able to discriminate between the components of exhaust gas. Thus, it cannot either determine what elements are present in the exhaust gas or otherwise perform a detailed examination of the gas. Nor does the sensor determine any ingredient as to "kind" as it reacts to the combined property of NOx without differentiating between them. ECF No. 53, Meager Decl. ℙ 10. Admittedly, it is difficult to see how determining an ingredient of a substance as to "amount" is different from "measurement" and that the *Burrows* court intended to conflate the terms "analysis" and "measurement." Concluding that determination of the amount of an ingredient, which is "measurement" by definition, would obliterate HTSUS heading 9026—which is something even Defendant concedes is not appropriate.

In any event, the device in *Burrows* was not one that simply determined an ingredient as to kind or amount. In addition to detecting the presence of a specific enzyme within a seed, the device also allowed for a chemical reaction to occur, wherein the enzyme reacted with a tetrazolium solution within the device to release hydrogen, which in turn turned into a red formalazine. 300 F. Supp. at 458. This complex, multi-step process is certainly much more than what the NOx sensor can do, which is merely react to the combined presence of NOx and generate a corresponding electrical signal. ECF No. 53, Meagher Decl. ℙ 10.

In *Pharmacia*, 9 CIT at 441, "chemical analysis" was held to include devices used to "perform or facilitate physical or chemical determination of the quantity, qualities, or composition of a substance." Again, it is unlikely that this Court would eliminate HTSUS heading 9026 by holding that the determination of a quantity, which is "measurement" by definition, qualifies as

"chemical analysis."  Notably, the device in *Pharmacia* was found *not* to be an analytical apparatus because it merely separated ingredients in a liquid to obtain a purified substance.  *Id.*  Here, the NOx sensor disassociates the oxygen atoms to calculate the concentration of NOx.  ECF No. 53, Meagher Decl. ⁋ 6.  If this function, by Defendant's logic, constitutes analysis, then the separation of materials in *Pharmacia* to obtain a pure substance would necessarily entail analysis as well because the device would require "determining" what needs to be separated.  As can be seen, Defendant's logic belies itself.

Defendant also argues that the NOx sensor performs "chemical analysis" pursuant to the definition offered by its expert, Calvin Bartholomew.  ECF No. 64, Cross Mot. at 27-29.  Dr. Bartholomew, however, already admitted in his deposition that the NOx sensor does not perform all of the steps of "chemical analysis," and that the ECU is needed to complete the last step. Specifically, Dr. Bartholomew testified that "chemical analysis" involves: (1) separation and sample collection/treatment; (2) measurement; and (3) data acquisition and processing and that the ECU, which is not part of the NOx sensor, is needed to complete the third step.  ECF No. 56-16, Add. Tab 16, Bartholomew Dep. Tr. 126:19-127:5, 141:25-142:11.  Dr. Bartholomew also readily admitted that the probe of the NOx sensor, which is the imported merchandise at issue, "can do nothing"—it cannot analyze *or* measure."  *Id.* at 142:14-15.  Defendant's attempt to explain Dr. Bartholomew's testimony or change his definition of "chemical analysis" to circumvent these admissions does not change the fact that the NOx sensor does not perform analysis according to Defendant's own expert.

2.      **The NOx Sensor is Not a "Gas or Smoke Analysis Apparatus"** *Eo Nomine.*

Although heading 9027 never mentions anything remotely similar to a NOx sensor, Defendant, in puzzling conjecture, refers to the NOx sensor probe as an electrical "gas or smoke

analysis apparatus," identified *by its name* in subheading 9027.10.20.  ECF No. 64, Cross Mot. at 31.

At the outset, contrary to Defendant's position, headings 9027 and 9026 are principal use provisions and not *eo nomine*.  "An *eo nomine* provision describes an article by a specific name, whereas a use provision 'describes articles according to their principal or actual use.'" *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1164 (Fed. Cir. 2017) (quoting *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312-16 (Fed. Cir. 2012));  *Warner-Lambert Co. v. United States*, 425 F.3d 1381, 1384-85 (Fed. Cir. 2005) ("[U]se provision is designed to classify particular merchandise according to the ordinary use of such merchandise . . . and it describes articles in the manner in which they are used as opposed to by name.").  In *Schlumberer*, the provision at issue already enumerated all ceramic ware subject to the classification (ceramic troughs, tubs, pots, jars, etc.).  *Id.*  As a result, although the provision mentioned certain uses for ceramic wares, it was treated as *eo nomine* "because it describe[d] the article it covers by name."

Here, the opposite is true.  Heading 9027 mainly lists the uses for which the merchandise within its scope is intended: "for physical or chemical analysis…for measuring or checking viscosity, porosity, expansion, surface tension or the like…for measuring or checking quantities of heat, sound or light."  ECF No. 56-3, Add. Tab 3, HTSUS Heading 9027.  Similarly, heading 9026 enumerates the uses of the merchandise, such as "measuring or checking the flow, level, pressure or other variables of liquids or gases" and "measuring or checking the flow or level of liquids."  ECF No. 56-1, Add. Tab 1, HTSUS Heading 9026.  Unlike the provision in *Schlumberger*, headings 9027 and 9026 do not describe the instruments and apparatus by name— rather they list the uses of the instruments and apparatus must perform to fall under those headings. 845 F.3d at 1164; *see also S.C. Johnson & Son, Inc. v. United States*, 335 F. Supp. 3d 1294, (CIT

2018) (determining that HTSUS heading 3923 is a principal use provision because it covers "articles for the conveyance or packing of goods," *i.e.* a specific use).

Because headings 9027 and 9026 are use provisions, merchandise can be classified under these headings only if its principal use fits within the appropriate list of enumerated uses. *Clarendon Marketing, Inc. v. United States*, 144 F. 3d 1464, 1467 (Fed. Cir. 1998)[3]. Because the NOx sensor is used principally for measuring the concentration of NOx[4], it is therefore a measurement device under heading 9026. *See* ECF No. 56-19, Add. Tab 19, Schuster Depo. Tr. 29:7-22 (stating that "in the automotive industry" sensors are used "to measure and check things in the actual system. . . It's not used as an analysis device to do a study and investigation"). Defendant has produced no evidence to suggest otherwise.

In addition to not being *used* for analysis, the NOx sensor also does not fit into the description of heading 9027.  The Explanatory Notes for heading 9027 define "gas or smoke analysis apparatus" as, in relevant part, devices "used to analyze combustible gases or combustion by-products (burnt gases) in coke ovens, gas produces, blast furnaces, etc., in particular, for determining their content of carbon dioxide, carbon monoxide, oxygen, hydrogen, nitrogen or hydrocarbons."  ECF No. 56-4, Add. Tab 4.  This definition does not mention NOx at all, and it does not contain any words indicating that the list of the substances the apparatus determines is

---

[3] This is also consistent with the General Rules of Interpretation that apply to interpreting HTSUS provisions.  General Note 1 specifically states that "a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use."  *See* Add. 2, General Rules of Interpretation, HTSUS, General Note 1.

[4] Although the NOx sensor provides a signal corresponding to oxygen, as a byproduct of the NOx measurement, the *principal* function of the NOx sensor is to enable control of the SCR system.  If the principal function of the NOx sensor were to measure oxygen, it would be located elsewhere in the vehicle and would require further development and optimization to perform that function to enable another control system, such as fuel control.

not exclusive.  Had the U.S. International Trade Commission intended to include NOx on the list, it would have undoubtedly done so.

Additionally, Defendant's argument that the NOx sensor fits this definition is, again, based on the wrong assumption that the sensor "determines" any content of the exhaust gas.  As discussed above, the sensor cannot "determine" the concentration of NO versus $NO_2$ or $NH_3$—it simply reacts to the combined property.  ECF No. 53, Meagher Decl. ⁋ 10.  Nor can it determine any other species included in the exhaust gas.

In an attempt to grasp at straws, Defendant has located a definition of an "exhaust-gas analyzer" on the internet.  An exhaust-gas analyzer a distinct, defined apparatus the function of which is entirely different from the NOx sensor.  The exhaust-gas analyzer is not a category or definition of devices, but a complicated, multi-function instrument shown in the picture below. According to Defendant's definition, this device determines specific components of the exhaust gas, including carbon monoxide, NOx, and hydrocarbons *and* analyzes engine performance.  In fact, this apparatus includes multiple parts for the determination of different components:  a flame ionization detector for hydrocarbons, a non-dispersive infrared detector for carbon dioxide and monoxide, and a chemiluminescent analyzer for NOx (which can also determine the amount of NO).      ECF    No.    63-8,    Def.    Ex.    5    at    5,    *available    at* https://www.oxfordreference.com/search?q=exhaust+gas+Analyser&searchBtn=Search&isQuick Search=true&print (last viewed Dec. 26, 2021).   Notably, the gas analyzer can differentiate between and measure at least *nine* different compounds.  *See* Add. 3, Horiba Automotive Test Systems, Motor Exhaust Gas Analyzer Mexa-One, at 22.  With respect to the NOx species, the exhaust gas analyzer uses a mid-infrared quantum cascade laser to perform simultaneous measurement of four compounds, including NO, $NO_2$, $N_2O$, and $NH_3$.  *See id.* at 13.  Contrary to

Defendant's contention, the NOx sensor is not at all like the complex exhaust-gas analyzer apparatus referred to in Defendant's Cross Motion and pictured below, and cannot perform nearly the same functions. Notably, this type of equipment is used for analysis of system performance in parallel with actual measurements coming from the NOx sensors to analyze the performance of the sensors themselves, as well as the SCR control system.



### 3. The NOx Sensor is Dissimilar from the Devices Enumerated in Heading 9027.

Heading 9027 lists several examples of analytical apparatus (polarimeters, refractometers, and mass spectrometers) which Defendant argues are similar to the NOx sensor. ECF No. 64, Cross Mot. at 36-38. An overview of these devices, however, proves the opposite—the sensor is not at all like the apparatus listed in heading 9027. At the outset, of all of these apparatuses are designed for single-site application and use in laboratories or manufacturing facilities, not for high-volume, broad-based commercial and consumer applications, such as passenger cars and trucks.

"A polarimeter measures the angle of rotation of a plane of polarized light that results when the light is passed through certain transparent materials. The effect a substance has on polarized light is closely related to its chemical structure." *United States v. Bockius*, 564 F.2d 1193, 1195 n.3 (5th Cir. 1977) (using a polarimeter to identify a specific type of cocaine). As such, a polarimeter is specifically used to *identify* chemical substances based on how the light passes through them. The NOx sensor has no such capabilities. It simply detects the combined property of NO, $NO_2$, and $NH_3$ in the exhaust gas without identifying them.

A refractometer measures the degree to which the light changes direction when it enters a liquid, which is called the angle of refraction. *See* https://www.coleparmer.com/tech-article/refractometers (last visited on January 13, 2022). The refractometer then correlates the refraction angle to the refractive index which consists of established values. For example, methanol has the refractive index of 1.326, olive oil's is 1.471 and so on. Thus, by correlating the refractive angle to the table of established indices, the refractometer can accurately identify a multitude of substances. The NOx sensor, again, cannot do anything remotely similar to this.

A spectrometer analyses gases, such as emissions from industrial plants, by capturing the gas and passing a beam of infrared light through the mixture. *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1135 (Fed. Cir. 2004). The spectrometer then measures the absorption of light by each of the mixture's ingredients, thus being able to identify each component. *Id.* Further, the spectrometer produces a *chart* that shows peaks above a baseline that correspond to the specific components of the gas. *Prochroma Techs., Inc. v. United States*, 60 Fed. Cl. 614, 626 (Fed. Cl. 2004). As such, the spectrometer does not only *determine* the different components of the mixture at hand, but it also provides as simultaneous readout of the same.

The NOx sensor is not capable of discriminating against the different constituents of the exhaust gas and cannot identify all of the gas's components by concentration or any other variable. It also cannot provide a readout of the NOx concentration—this step happens in the external ECU. As a result, the NOx sensor is not at all like the spectrometer mentioned in heading 9027.

Based on the foregoing, it is clear that the NOx sensor is not at all like the devices listed in heading 9027, and Defendant's argument to the contrary lacks merit.

C.   THE NOx SENSOR FALS SQUARELY WITHIN THE SCOPE OF HTSUS HEADING 9026.

Defendant proffers several theories in support of its argument that the NOx sensor is not classifiable under HTSUS heading 9026, all of which are baseless.

**1.   The NOx Sensor is an Instrument or Apparatus for Measuring or Checking a Process Variable of a Gas, i.e. NOx Concentration.**

In addition to specifically listing several instruments, heading 9026 covers "instruments and apparatus for measuring or checking the pressure, kinetic energy or other process variables of liquids or gases."  Although the term "process variable" is not defined in the HTSUS, some scientific sources define it to include, among other things, "chemical composition" of a substance, while others, which Defendant itself cites include things like "moles and molecular weights mass and volume." *Compare* 2003 McGraw-Hill Dictionary of Scientific and Technical Terms, 6th ed., 2003, p. 1677 *with* ECF No. 63-8, Def. Ex. 5, at 16-17, McGraw-Hill education's *Chemical Engineering: The Essential Reference.*"  The definition of "process variable" that includes "composition" is more prevalent and has been adopted by courts and legislatures.  *See, e.g.*, *Diamond v. Diehr*, 450 U.S. 175, 206 (1981) (emphasis added) (nothing that the term "process variable" in the context of curing synthetic rubber includes "temperature, curing time, *particular composition of material*, or mold configurations"); Nev. Admin. R. 59.95412 (including "composition" within the term "process variable").

Even if Defendant's definition of "process variable" were adopted, it is difficult to see how the concentration of NOx in the exhaust gas is any different than molarity, mass, or volume of a substance.

Further, despite Defendant's argument, the definition of "process variable" that includes "chemical composition" does not conflict with headings 9026 and 9027, or their Explanatory Notes. In essence, Defendant argues that because heading 9026 specifically excludes instruments for physical and chemical analysis, and EN 90.27(8) defines "gas or smoke analysis apparatus" as instruments "for determining and measuring" content, the term "chemical composition" cannot be within the definition of "process variable" under heading 9026. ECF No. 64, Cross Mot. at 52-53.[5]

EN 90.27(8) limits the definition of "gas or smoke analysis apparatus" to, among other things, "electrical gas or smoke analysis apparatus…for determining and measuring the content of the following gases: carbon dioxide, carbon monoxide and hydrogen, oxygen, hydrogen, sulphur dioxide, ammonia." The EN does not use the conjunction "or," which likely means the list of gases is exhaustive. NOx, for example, is not on this list. Further, the absence of an "or" makes it clear that the instruments falling within this definition are capable of multi-gas discrimination and measuring multiple gases simultaneously. Notably, this EN contains Orsat apparatus as an example, which is synonymous with the complex exhaust-gas analyzer discussed *infra*. The NOx sensor cannot perform this multi-gas discrimination; the only thing it is capable of is reacting to the joint property of NO, $NO_2$, and $NH_3$. As a result, because EN 90.27(8) is limited to certain circumstances of "determining and measuring the content" of gas, the term "chemical

---

[5] A process variable is a parameter selected by the control system designer to enable the intended operation of a control system, not necessarily constrained by a textbook or dictionary definition.

composition" can still be included within the meaning of "process variable" under heading 9026 without conflicting with other parts of the HTSUS.

This logic, further, is consistent with the classification of the hydrogen sensor.  If Defendant's argument holds water, the hydrogen sensor (since it can "determine" and measure hydrogen out of the multiple components of air, such as $N_2$, $O_2$, $CO_2$, $H_2O$, and Ar, outside a vehicle's fuel tank) must also be a "gas or smoke analysis apparatus."  Customs, however, specifically declined to classify the hydrogen sensor under heading 9027[6].  Defendant ignores the classification of the hydrogen sensor and cannot differentiate it from the NOx sensor in any meaningful way, likely because it cannot.

## 2.   The NOx Sensor is More Similar to the Instruments Classified Under Heading 9026.

Next, Defendant argues that the NOx sensor is dissimilar to the three devices specifically listed in heading 9026: flow meters, level gauges, and manometers.  As Defendant itself notes, these devices are just exemplars, and the scope of heading 9026 is in no way limited to those devices.  And, while Defendant is correct that these four devices perform functions different from the NOx sensor, they all share a commonality—measurement of a variable, be it gas velocity (flow meter), fluid level (level gauge), pressure (manometer), or, in this case, concentration of NOx.

---

[6] This is also true for several other sensors that perform a similar function but have not been classified under heading 9027.  For example, the humidity sensor by definition measures a chemical species—water ($H_20$)— in the air, which is composed of multiple other compounds.  To do this, the sensor necessarily "separates" and "detects" water from the other compounds, thus performing a nearly identical function as the hydrogen and NOx sensors.  Similar to the hydrogen sensor, Customs did not classify the humidity sensor under heading 9027.  Instead, it was classified under heading 9025—as an electrical hygrometer and thermometer. *See* Add. 4, NY H89862.  If Defendant's logic applied to these sensors, then many devices would be performing some type of "analysis," because the majority of the sensors require some degree of separation and detection from a mixture to measure the specific element/molecule or physical parameter they are designed to measure.

D.   DEFENDANT FAILS TO ADDRESS SEVERAL OF CONTINENTAL'S
ARGUMENTS.

In its Motion, Continental made several arguments regarding the Customs' prior rulings and the inconsistencies in Defendant's deliberations with respect to the classification of the NOx sensor, which Defendant either mentions in passing or ignores completely.   First, although Defendant concedes that Customs' other rulings are entitled to a level of respect (ECF No. 64, Cross Mot. at 58, citing *Plexus Corp. v. United States*, 489 F. Supp. 3d 1379, 1402 (Ct. Int'l Trade 2020)), Defendant almost completely disregards the hydrogen sensor ruling.   Indeed, all Defendant says about the ruling is that the hydrogen sensor "only detected the presence of hydrogen and performed no measuring or analysis."[7]   ECF No. 64, Cross Mot. at 60.   Defendant does not elaborate on this conclusory statement.   Nor does it attempt to explain how the NOx sensor operationally differs from the hydrogen sensor.   Just like the hydrogen sensor detects hydrogen in the mixture that is present in atmospheric air in vehicle, the NOx sensor detects NOx in the exhaust gas.   Similar to the hydrogen sensor, the NOx sensor sends an electrical signal proportional to the NOx concentration to the system's ECU for further processing.   Notwithstanding these similarities, Customs refused to classify the hydrogen sensor in heading 9027, while classifying the NOx sensor in that same heading.   Yet, Defendant fails to explain this obvious inconsistency.

Defendant also completely ignores the deliberations of its own personnel while considering the classification of the NOx sensor.   It is clear that Defendant was leaning toward classifying the sensor in heading 9026 (ECF No. 56-13, Add. Tab 13, CBP000259, CBP000232) before doing an

---

[7] This is incorrect.   The hydrogen sensor measures the hydrogen concentration in the atmosphere in or around the vehicle, not in the hydrogen fuel tank, and checks when the concentration reaches an unsafe level.   The sensor separates hydrogen molecules into hydrogen atoms with a thin film of metal and generates a voltage that is amplified and processed by signal conditioning electronics.   The metal film is selective to hydrogen gas and is not affected by other species; it separates out the hydrogen from the other species in the atmosphere.

about face without any obvious rationale.  When faced with this glaring inconsistency (which detracts from the presumption of correction that typically attaches to Customs' decisions) Defendant does not even bother to address it, thus waiving any arguments it may have in this regard.  *See, e.g.*, *Calgon Carbon Corp. v. United* States, 145 F. Supp. 3d 1312, 1322 (Ct. Int'l Trade 2016) (finding that the government had abandon any arguments in response to the plaintiff's motion for summary judgment that it failed to make in its opposition); *United States v. Great Am. Ins. Co. of New* York, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."); *Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (affirming summary judgment based on a waiver after the non-moving party failed to make arguments in its opposition papers).

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set forth in Plaintiff's Motion for Summary Judgment, Plaintiff requests that its motion be granted, that Defendant's Cross Motion be denied, that the imported merchandise be determined to be classified properly in heading 9026, HTSUS, and that Customs be ordered to reliquidate the subject entries at the applicable rate of duty in force on the dates of entry and to issue refunds to Plaintiff with interest as required by law.

Respectfully submitted,

McGUIREWOODS LLP
Attorneys for Plaintiff


By:   */s/ Anastasia P. Cordova*
        Anastasia P. Cordova
        Shawn R. Fox
        1251 Avenue of the Americas
        20th Floor
        New York, New York 10020
        (212) 548-7016
        acordova@mcguirewoods.com
        sfox@mcguirewoods.com

Dated:      New York, New York
           January 31, 2022